INHABITANTS OF BREMEN *vs.* INHABITANTS OF BRISTOL.

Lincoln, 1876.—December 22, 1876.

*Town.*

Where two termini of a line between towns are established, and no intermediate conflicting point is indicated in the description, the line will be deemed to be a straight one.

This rule was held to apply where natural boundaries were disregarded, and a point of land was cut off and made part of a town on the other side of a cove.

In the absence of evidence on the face of the earth, showing the original actual location of the town of Bremen, the last call in the act of incorporation is a line starting from the point of departure named, and running in such a course as to include Long island and Hog island down to low water mark. "Crossing the bar," &c., means passing clear across the entire width of the bar on the line of low water; and when the western limit of the bar is reached, then a straight line from that point "to the first mentioned bound" is the true line.

ON REPORT.

PETITION under R. S., c. 3, § 43, for the appointment of commissioners to determine a disputed line between the petitioning town of Bremen on the north, and the respondent town of Bristol on the south, commencing at Muscongus harbor, and extending to Biscay pond; and also from the bar between Hog island and Loud's island to the point where the dividing line between said towns strikes the westerly shore of Muscongus harbor.

The commissioners appointed under the petition, having in part performed the trust, reported that they found it necessary to settle a question of law which arose upon the construction of the statutes establishing the boundaries between the two towns before they could make a final satisfactory report, and reported specially that a case be made up for the law court for their advice and direction. The commissioners referred to a plan showing the configuration of the land and sea; and to the original act incorporating the town of Bristol, also the act to divide Bristol and incorporate Bremen, approved February 19, 1828, and the act establishing the line between Bristol and Bremen, approved March 6, 1830, and closed their special report as follows:

"The question arises upon the construction of the language used in the act of 1828, in describing the last part of the boundary line, which is in these words, viz.: 'crossing the bar between Hog island and Loud's island, thence to the first mentioned bound.' No question is made as to the location upon the face of the earth, of the 'first mentioned bound.' It is indicated upon the plan by the letter B. in Muscongus harbor.

"Bremen contends that this line should be run on a straight

course from a point on the bar midway between Hog and Loud's islands, or at low water mark on Hog island, to the point B. This would leave a piece of the headland marked D. surrounded by water or land, conceded to be in Bristol, in Bremen. On the other hand, Bristol contends that this line, if to be run at all as part of the line between the two towns, should be so run after crossing the bar, either by following the line of low water upon the one side of the harbor or the other, or by following the channel of the harbor, that it may reach the point B. and leave the headland wholly in Bristol.

"Being apprehensive that our decision of this question might be final, we deem it expedient to submit it to the court, asking that the matter may be recommitted to us with such instructions as the court may see fit to give."

The respondents offered to prove that the point of land in dispute had been taxed by Bristol since the division of the town. For the purpose of determining the effect of such taxation, the fact may be regarded as proved, but was not admitted by the petitioners to affect any future proceedings.

The parties agreed that the case be reported to the law court for the determination of the legal questions raised.

*J. Baker*, for the petitioners.

*A. P. Gould & J. E. Moore*, for the respondents.

VIRGIN, J. In creating and prescribing the territorial limits of towns, existing topographical facts such (as in the case at bar) as rivers and large bodies of water are adopted by the legislature as the best defined and most permanent monuments of boundaries. Considering the conformation of the territory about Muscongus harbor, it seems very evident that the legislature did not intend to include in the town of Bremen, any part of the point of land on the south side of the harbor. To call such a line simply unreasonable would be so complimentary as to justly render us obnoxious to the charge of flattery.

This fact togther with the language of the act of March 6, 1830, "establishing the town line between Bristol and Bremen," would

seem to make it equally certain that the legislature supposed and believed that the limits defined in the act of incorporation did not include any portion of the point of land mentioned.

But whatever may have been the real intention of the legislature, it cannot be upheld at the expense of long established rules of law. The expressed intention is the one that must govern. If the commissioners cannot find on the face of the earth, sufficient evidence to enable them to "ascertain and determine the line" as formerly laid out, ( *Wells* v. *Jackson I. M. Co.*, 48 N. H. 491,) then resort must be had to rules of construction; and the line run accordingly as if it were projected now for the first time. If the line thus ascertained cuts off a small part of the point contrary to the understanding and belief of the legislature, that department of the government which alone has jurisdiction of town boundaries, will undoubtedly on proper presentation thereof make the proper correction.

The town of Bristol is bounded on the east by the sea ; and Bremen was constructed out of the north-east corner of Bristol, together with certain islands. After defining the southern, western and northern boundaries of the new town, the act of incorporation takes its next departure from the sea shore in the following language : "Thence easterly so as to include Long island and Hog island crossing the bar between Hog island and Loud's island, thence to the first mentioned bound."

It is immaterial whether this language be viewed as one roving call or two, the result must be the same. It is evident by reference to the plan, that the course "easterly" would not "include" the islands named. The inaccuracy of the course must therefore give way to the certainty of the island monuments; and to "include" the islands means the whole of the islands, ( *Cate* v. *Thayer*, 3 Maine, 71,) *i. e.*, to low water. "Crossing the bar" equi-distant between Hog island and Loud's island, would "include" more than the whole of the islands, if such point be beyond low water mark. "Crossing the bar," &c., means passing clear across the entire width of the bar on the line of low water, and when the western edge or limit of the bar on the line of low water is reached, then a straight line from that point "to the first mentioned bound"

is the true line. *Grant* v. *Black,* 53 Maine, 373, 377. *Hovey* v. *Sawyer,* 5 Allen, 554. *Bethel* v. *Albany,* 65 Maine, 200.

APPLETON, C: J., WALTON, DANFORTH and PETERS, JJ., concurred.

LIBBEY, J., having been of counsel, did not sit.